E-FILED
Wednesday, 08 September, 2004 11:45:41 AM
Clerk, U.S. District Court, ILCD

FILED
SEP 08 2004
JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA, IL

IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| HOWARD VINCENT ASHLEY, | ) |
| Petitioner, | ) |
| | ) |
| | ) Case No. 04-2104 |
| JERRY BOHLER, | ) |
| Respondent. | ) |

## PETITIONER'S RESPONSE TO RESPONDENT'S ANSWER

HOWARD VINCENT ASHLEY, Petitioner, pro se, in the above entitled cause, respectfully submits to this Court, in connection with the petition filed in the action, to consider PETITIONER'S RESPONSE TO RESPONDENT'S ANSWER, to his petition for writ of habeas corpus.

In support thereof Petitioner avers as follows:

1. On 2 June 2004, Petitioner, Howard Vincent Ashley, submited his pro se Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254 and the Court's order on the initial filing of the Petition (Ashley v. Pierson, No. 00-2226) which stated in part: "Therefore, Petitioner will need to file a mandamus action in state court concerning the claims brought in his petition and invoke a complete round of state appellate process before this court may hear the claims presented in the instant petition." 24 August 2001 Order, No. 00-2226.

2. In the petition Ashley contends that his rights to due process and freedom of speech under the Fourteenth and First Amendments of the United States Constitution were violated by prison officials resulting in the revocation of 30 days of his Good Conduct Credits during the remand of a disciplinary hearing where none of Ashley's evidence was considered, including denial

1

his witness request, which could have also been supplemented via the affidavits that were submitted to the hearing officers (Copy appended to Motion to Add Exhibits, No. B18-23).

3. Respondent submitted an Answer to Ashley's habeas corpus petition, arguing procedural default, while not challenging the Merits of the Constitutional claims listed.

4. Based on the procedural history of the instant petition, not only are the claims not procedurally barred, the state court's determination that: "no reasonable excuse exists for the delay" (Ashley v. Pierson, 274 Ill.Dec. 574, 579); "Pierson and Snyder were inherently perjudiced by that delay"(Ashley v. Pierson, 274 Ill.Dec., at 580)(**NOTE:** "inherently perjudiced" as a substitute for IDOC not asserting an iota of detriment that would be incurred based on the timing of the complaint): and his only reason for delay was the pursuit of federal claims (id.), was erroneous and irregular.

5. In light of the procedural facts and the lack of claim of detriment from "the delay" that would have been incurred by IDOC relitigating a disciplinary action not fairly adjudicated by prison officials, and that it was the United States District Court's opinion, based on the procedural facts that included the Mandamus petition (Ashley v. Washington, et al., 98 MR 273) that was concluded five months prior to the submission of the habeas corpus petition (Ashley v. Pierson, No. 00-2226), that a remedy in the state court system still existed by 24 August 2001, the instant petition should not be barred by the anomalies..

<u>Administrative and Judicial Procedural History</u>

I. Emergency grievance submitted by Ashley regarding the actions of Correctional Officer Ervin Smalls 14 February 1998.

2

II.  6 May 1998, IDR issued charging Ashley with intimidations and threats (20 Ill.Admin.Code 504A206).

III.  8 May 1998, adjudication of the 6 May IDR by Danville Correctional Center's adjustment committee, subsequently finding Ashley guilty of the charges with the Chief Administrative Officer approving the charges, sanctions included 30 days loss of Good Conduct Credits.

IV.  Transfer was also apart of the sanctions and within days of the 27 May 1998 transfer, Ashley requested a copy of his grievances for the period from 14 February to 27 May 1998 from the Centralia Correctional Center's record office, but the 14 February 1998 complaint against Officer Smalls was not included with the documents sent by the record office.

V. Freedom of Information Act request submitted by Ashley requesting any and all documents related to the 6 May IDR.

VI.  The request was denied and had to be appealed to the IDOC Director in Springfield which was also denied.

VII, 7 July 1998 Ashley submitted his appeal/grievance regarding the 6 May IDR to the Administrative Review Board/Director.

VIII.  9 September 1998, hearing held by the ARB regarding the appeal/grievance of the 6 May IDR.

IX.  9 September 1998, decision issued on appeal/grievance, ordering the 6 May IDR remanded, rewritten and reheard.

X.  11 October 1998, Mandamus (Ashley v. Washington, et al., 98 MR 273) filed in the Seventh Judicial Circuit Court of Illinois, regarding documents related to the 6 May IDR.

XI.  Ashley was transferred to the Hill Corr.Ctr., on 15 January 1999.

XII.  On 9 February 1999, Ashley received the ARB/Director's

3

9 September 1998, decision, five months after the decision had been reached, ordering the 6 May 1998, IDR remanded to the Danville Correctional Center to be written and reheard. with a report regarding same to be forwarded to the Director's office within 20 days of the receipt of the decision (See Exhibit B31[1.]).

XIII. Nearly one month after receiving the five month late ARB/ Director's decision, Ashley requested that the charges be dismissed and the IDR expunged from his file (Exhibits B33-35a), to no avail.

XIV. On or about 10 March 1999, six months after the decision to remand the IDR, the IDR was rewitten, and delivered on 18 March, with the "rehearing" occurring 21-22 March.

XV. One year and 2 months after the reported incident, Ashley requested the decision on the 21-22 March remand hearing (Exhibit B43) and was given a copy of the decision, followed by the IDOC Director's decision one month later.

XVI. Litigation continued regarding the documents that were attached to the 6 May 1998 IDR in Ashley v. Washington, et al., 98 MR 273, with the parties submitting various pleadings.

XVII. On 8 March 2000, the Court in Ashley, 98 MR 273, ordered the documents being withheld turned over to Ashley.

XVIII. On 14 August 2000, Ashley filed his pro se Petition for Habeas Corpus in the United States District Court, Central District of Illinois regarding the revocation of his good conduct credits through the disciplinary proceedings, asserting that unconstitutional procedures were utilized (Ashley v. Pierson, No. 00-2226).

XIX. The Court in Ashley, 00-2226, ordered respondent to file

---

1. Exhibits with letter "B" are are Appended to Motion to Add Exhibits.

4

an Answer within thirty days of the 22 August 2000 order, and by 24 October 2000, Respondent filed a Motion to Dismiss, followed by petitioner's response.

  XX.   Respondent's Motion to Dismiss was granted on 24 August 2001.

  XXI.  Ashley submitted a Petition of Mandamus to the Seventh Judicial Circuit Court, Illinois, on 17 October 2001, Ashley v. Pierson, 01 MR 571.

  XXII.  Defendants filed a Motion to Dismiss in December 2001 and the Court granted the Motion on 11 April 2002, and Ashley filed a timely Notice of Appeal.

  XXIII.  Briefs were submitted by the parties to the Appeal, with a Reply Brief submitted by Ashley, followed by Defendants' response to his reply.

  XXIV.  The State Appellate Court issued its opinion 17 June 2003, affirming the lower court's decision and Ashley petitioned for rehearing (Ashley v. Pierson, 274 Ill.Dec. 574 (App.4th Dist.2003).

  XXV.  Ashley Petitioned the Illinois Supreme Court for Leave to Appeal (Ashley v. Pierson, No. 96875) which was denied on 3 December 2003.

  XXVI.  On 2 June 2004 the instant petition was filed.

    6.  On the surface, the Petition appears unexcusably procedurally defaulted, however, more than a cursory review would unvail cause and prejudice, a fundamental miscarriage of justice and actual innocence, conjoined with the Court's order (Ashley v. Pierson, No. 00-2226) for exhaustion of state remedies to be accomplished.

9. For the reasons stated in the foregoing Response, if it is determined by the Court the Petitioner has procedurally defaulted based on the state court's time barred ruling, he should not be precluded from bringing his claims before the Court in Habeas Corpus.

### CAUSE AND PREJUDICE, FUNDAMENTAL MISCARRIAGE OF JUSTICE AND ACTUAL INNOCENCE APPLY IN THE INSTANT PETITION

Petitioner, Howard Vincent Ashley, has listed the administrative and judicial steps that the claims in his petition have taken since the initial Inmate Disciplinary Report and the grievance written against the officer who coerced, according to the witness who was not allowed to give his statement, a prisoner into saying he had been threatened by Ashley.

The evidence of coercion was vital to Ashley's defense since another correctional staff person reported that Ashley admitted to threatening the victim and IDOC was not willing to accept his plea of not guilty as fact with an officer claiming to have gained a confession and listed another correctional person as a witness to the confession, but that person never reported an admission, nor did he state as much to the committee.

A. Cause and Prejudice.

Undoubtably, there were administrative and judicial anomolies, and bias that contributed to when the Mandamus (Ashley v. Pierson, 01 MR 571) was filed.

In submitting an Answer to Ashley's Habeas Corpus, Respondent contends that the petition is procedurally defaulted which would bar him from Habeas Corpus relief, arguing that his failure to fairly present his claims to the State Courts precludes Federal

review of his Constitutional Claims.

In <u>Lambrix v. Singletary</u>, 520 U.S. 518 (1997), the Supreme Court stated, "judicial economy might require application of the Teague rule prior to consideration of procedural bar. id. at 520 U.S. 524.

For IDOC, by way of Counsel, to raise the time issue in the State Mandamus they were required to present proof of how they would be disadvantaged by the delay in the filing, instead the State Appellate Court granted them the status of "inherently perjudiced", a distinction that was criticized by one of their judicial colleagues in dissent.

Not only was the granting of such status extremely charitable, considering detriment was not asserted, it was a double-standard which was prejudicial to the ability to litigate and/or resolve the issues surrounding the "one-sided" disciplinary proceeding(s) that deprived Ashley of his freedom, via revocation of good conduct credits.

Where a petitioner has procudurally defaulted a claim by failing to raise it on direct review, the claim may be raised in the habeas only if the petitioner can first demonstrate either cause and actual prejudice, or that he is actually innocent. (See e.g., <u>Bousley v. U.S.</u>, 140 L.Ed.2d 828 (1998).

Ashley presented a United States Supreme Court case in the State Courts that showed detriment wouldn't have occurred due to the fact that the due process deficiencies of not contacting witnesses and not considering his defense, (highlighted in the second hearing by the five page statement and nearly 21 pages of exculpatory documents, which did not sway the findings nor the sanctions.

The United States Supreme Court held, that "the principal defect

7

complained of ... would, if established, necessarily imply the invalidity of the deprivation of his good conduct credits. His claim is, first of all, that he was completely denied the opportunity to put on a defense through specifically identified witnesses who possessed exculpatory evidence. It appears that all witness testimony in his defense was excluded. ... This is an obvious procedural defect, and state and federal courts have reinstated good-time credits (absent a new hearing) when it is established. ... Respondent's claim, however, goes even further, asserting that the cause of the exclusion of the exculpatory evidence was the deciet and bias of the hearing officer himself. ... The due process requirements of a prison disciplinary hearing are in many ways less demanding than those for criminal prosecution, but they are not so lax as to let stand the decision of a biased hearing officer who dishonestly suppresses evidence of innocence. Edwards v. Balisok, 137 L.Ed.2d 906, 914 (1997) (citation omitted)

It was said of Ashley's witnesses, that McCaa transferred and the officer no longer worked for IDOC, with McCaa's testimony available by telephone or through a hearing officer in his place of incarceration, but IDOC implied he could not be contacted in the interest of providing the only favorable defense eyewitness account to the coercion of the purported victim.

As the Respondent, in the case at bar, so cordially repeated the basis for the state court's determination that IDOC would be inherently prejudiced by the delay in seeking Mandamus, even noting the 1906 case referenced (City of Chicago v. Condell, 224 Ill. 595, 598-99), it is important to note that one of the other cases cited in reference stated that the label was given in "certain civil

8

service cases" as reasoning that inherent prejudice applied.[2] <u>Ashley v. Pierson</u>, 274 Ill.Dec. 574, 578 (citing Lee v. City of Decatur, 256 Ill.App.3d 192, 197-98, 194 Ill.Dec. 614 (1994).

However, none of the cases applied directly to IDOC costs in having to relitigate a disciplinary hearing "long after the original proceedings," <u>Ashley</u>, 274 Ill.Dec., at 580, as such a determination would be a misnomer. For example:

A hypothetical inmate receives an IDR where he loses good conduct credits; all administrative appeals are denied; so he seeks an order of Mandamus; the order is denied and he appeals to the state Appellate Court; Briefing is had on the appeal and a decision is rendered affirming the lower Court's decision or grants the appeal and the party adversely affected petitions to the Illinois Supreme Court; the Court denies the petitioner leave to appeal or grants leave making an averse decision for one of the parties (At this point, nearly two years time has elapsed since the original hearing); and if the prisoners seeks a habeas corpus in the Federal Court and receives an adverse decision, then the appeal is affirmed, by the time he petitions for a writ of certiorari to the United States Supreme Court, reasonably $3\frac{1}{2}$ years or more would have passed. (See e.g.: <u>Clayton-El v. Fisher</u>, 96 F.3d 236 (7th Cir.1996)(ten years passed before date of ruling and initial IDR); <u>Superintendent, Mass. Corr. Institution v. Hill</u>, 105 S.Ct. 2768 (1985)(IDR 3 years before Court decision): and the United States Court of Appeals decision in <u>Sweeny v. Parke</u>, 113 F.3d 716 (7th Cir.1997)(IDR one and a half years before the decision)).

Thus, the state Appellate Court decision based on two years passing before the Mandamus (01 MR 571) as being the reason IDOC would be prejudiced was an unfair assessment.

The adequate and independent state grounds doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state also relies on

---

2. (to IDOC)

9

federal law. Harris v. Reed, 489 U.S. 255, 266 (1989). A state procedural ground is not adequate unless it is "strictly or regularly followed." Johnson v. Mississippi, 486 U.S. 578, 587 (1988) (quoting Hathorn v. Lovern, 457 U.S. 255, 262-63 (1982).

Although when laches are determined to bar a plaintiff from continuing the pursuit of claims raised beyond the statutory limitations, the basis for raising the defense of "laches" must be established, whether its a state or federal court proceeding. The State needed to establish that it is prejudiced in its ability to respond by reason of the delay. *** Prejudice is not presumed and the state must at least allege some facts supporting its claims. *** The state has presented no factual question as to prejudice in its ability to respond to the petition caused by the delay. (quoting Mayola v. State of Alabama, 623 F.2d 992 (1980)) Williams v. Franzen, 531 F.Supp. 292, 299-300 (N.D.Ill.1981). See also, Caldwell v. Nolan, 522 N.E.2d 175, 182 (1988) and Mid State Coal Co. v. Griffin, 636 N.E.2d 1072, 1074 (1994).

B. Fundamental Miscarriage of Justice and Actual Innocence

According to the witness not allowed and the affidavits of the prisoners, who could hear the conversation of the eyewitness clearly from their cells (Exhibits B18-23), as he yelled down the segregation galley telling Ashley of the coaching of Ramsey into saying he had been threatened by Ashley, Ramsey was not threatened, but was told to say he had been threatened and therefore Ashley did not violate the rule that lead to the revocation of his good conduct credits.

In Murray v. Carrier, 477 U.S. 478 (1986), the United States Supreme Court stated, "that procedural default would be excused,

10

even in the absence of cause, when "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray, 477 U.S., at 496.

The procedural default can be excused under actual innocence exception because petitioner's claim, if true, rendered conviction void and could not be legal cause of imprisonment. Gonazlez v. Abbott, 976 F.2d 1499, 1504 (11th Cir 1992).

Not only was Ashley prevented from having his witnesses interviewed, there was clear evidence of not allowing his defensive presentations with the exclusion of mentioning the three affidavits (Exhibits B18-23) and the other documents presented with the five page statement. that was only mentioned as a "written statement was presented." State interference with petitioner's free choice to testify at trial may excuse procedural default. Newell v. Hanks, 283 F.3d 827, 837 (7th Cir.2002). In Kyle v. Whitley, 514 U.S. 419, the prisoner's right to due process was violated because the prosecution suppressed exculpatory evidence that, if disclosed, could reasonably have altered result of proceeding. Kyle, 514 U.S., at 453 (1995).

Prosecution withheld evidence that could have been used to impeach testimony of state's key witness and affect credibility. Crivens v. Roth, 172 F.3d 991, 999 (7th Cir.1999).

The withholding in the case of Ashley's IDR was in the form of not contacting witnesses vital to his defense, not considering, examining or reporting the essence of his evidence and withholding the documents that had to be obtained via Mandamus (Exhibits B24-27b).

To excuse procedural default habeas corpus petitioners must show cause and prejudice for failing to fairly present their claims to

11

the state courts or that a fundamental miscarriage of justice will occur, Coleman v. Thompson, 501 U.S. 722, 750 ... (1991). McAtee Cowan, 250 F.3d 506, 509 (7th Cir.2001).

Federal courts should not intrude into the relations between a state and its convicted criminals until the state has had a chance to correct its own mistakes. Markham v. Clark, 978 F.2d 993, 995 (7th Cir. 1992).

The State Court could have excused the delay[3] in bringing the Mandamus (01 MR 571), which contained the issues regarding the IDOC actions of preventing Ashley from putting on a defense, considering only staff imput during the hearing, not attempting to contact the witnesses he requested beyond determining their locations, and the administrators affirming same, along with the delays by IDOC in complying with the previous IDOC Director's orders, regarding the remand, including promptly causing the decision to be given to Ashley, not promptly causing the IDR to be rewritten and delivered to Ashley, not promptly causing the rehearing to take place, not promptly issuing a decision on the rehearing and even the new Director's final decision, which was issued nearly five months after the rehearing.

Additionally, IDOC withheld information that was attached to the IDR, causing a Mandamus order (Ashley v. Washington, et al., 98 MR 273) to be sought which the Defendants in Ashley, 01 MR 571, and the Appellate Court refused to acknowledge.

It is Petitioner's contention that Cause and Prejudice, Fundamental Miscarriage of Justice and Actual Innocence has been at issue since the filing of his response to Defendants' Motion to Dismiss in Ashley v. Pierson and Snyder, No. 01 MR 571 (Exhibit D con-

---

3. (See dissenting opinoin, Ashley v. Pierson, 274 Ill.Dec., at 580-82.

12

tained under separate cover accompanying Respondent's Answer), lead to, with regard to the state court's declination of the excuse(s), the state courts' decision being "contrary to .... clearly established Federal law, as determined by the Supreme Court of the United States." Lindh v. Murphy, 96 F.3d 856, 868 (7th Cir. 1996).

C. Substantive Due Process Rights.

An inmate's right to present the testimony of witnesses should not be discounted because many times it is his only available means to disprove the charges of a prison guard. Whitlock v. Johnson, 153 F.3d 380, 388 (7th Cir. 1998)

Due process, "when it takes on the form of prolonging the prisoner's incarceration or otherwise depriving him of what has been held to be liberty or property within the meaning of the due process clauses, it is surely actionable." Wagner v. Hanks, 128 F.3d 1173, 1176 (7th Cir. 1997). Issuing false and unjustified disciplinary charges can amount to a violation of substantive due process if the charges were in retaliation for the exercise of a constitutional right. Black v. Lane, 22 F.3d 1395, 1402 (7th Cir. 1994)

Due process is violated when an inmate is denied opportunity to present exculpatory evidence undercutting reliability of evidence factfinder relied upon. Meeks v. McBride, 81 F.3d 717, 7 (7th Cir. 1996).

In the instant petition, the due process that was required with regard to Ashley's evidence and witnesses, and his complusory right (not being raised as a Sixth Amendment right, per se), looking at the summary,[4] it would appear as though he did not defend himself against the charges, but had evidence, some of it dated in such a-way as to leave no doubt that he had it prior to the remand hearing

---

4. Remand Summary (Exhibit B44-45)

13

In determining whether the exclusion of evidence violated an accused constitutional rights, we must examine whether the proffered evidence was relevant, material, and vital to the defense, and whether exclusion of that evidence was arbitrary, <u>Long v. Young</u>, 869 F.2d 1008, 1011 (7th Cir. 1989),"[t]he touchstone of due process is protection of the individual against arbitrary action of government." <u>County of Sacramento v. Lewis</u>, 118 S.Ct. 1708, 1716 (1998) (quoting Wolff v. McDonnell, 94 S.Ct. 2963, 2976 (1974).

Seeing the Administrative and Judicial Procedural History list, specifically, the Administrative portions, major and minor requirements were not adhered to, ignored or blatantly rejected and the State Courts had the opportunity to review the record, had it not been for rejecting Ashley's cause and prejudice, fundamental "fairness", and actual innocence arguments, where it would have been discovered that at times it seemed that "The Book" was thrown out during <u>the remand period</u> from September 1998 to August 1999.

From the record, the state court's findings cannot and should not be presumed to be correct on questions of law nor the questions of fact. "Generally, an issue that involves an inquiry into state of mind may be considered a question of fact." <u>Miller v. Fenton</u>, 474 U.S. 104, 113 (1985). Furthermore, "an issue does not lose its factual character merely because its resolution is dispositive of the ultimate constitutional question. id. Whether state trial court considered certain claims of petitioner and thereby waived his procedural default was legal question not entitled to presumption of correctness. <u>Ashford v. Gilmore</u>, 167 F.3d 1130, 1135 (7th Cir.1999).

However, any principle that can be given meaning only through its application to the facts of the case ... generally regarded the

question as a legal question.  <u>Miller</u>, 474 U.S., at 114.

## CONCLUSION

WHEREFORE, Petitioner prays the will consider both the Judicial and the Administrative proceedings, taking into account the numerous anomolies, and the assertions throughout the state court system, considering cause and perjudices, fundamental miscarriage of justice and actual innocence as factors to the defaulted claims.

Respectfully submitted,

*Howard V Ashley*
Petitioner, Pro se

<u>Ashley v. Bohler</u>, No. 04-2104 USDC CD-Il

## CERTIFICATION OF SERVICE

The undersigned hereby certifies that he has served a copy of

the foregoing PETITIONER'S RESPONSE TO RESPONDENT'S ANSWER on:

        Colleen M Griffin-AAG
        Office of the Attorney General
        100 West Randolph Street, 12th Floor
        Chicago IL 60601

Attorney for Respondent,

by palcing same into the institutional mailing system at Hill Cor-

rectional Center, in Knox County, Illinois, with First Class

postage attached, addressed as listed above.

        Executed on: 03 September 2004

/s/ *Howard V Ashley*
Howard Vincent Ashley B39336
Hill Correctional Center
600 Linwood Road/P.O. Box 1327
Galesburg IL 61401

SUBSCRIBED AND SWORN TO

BEFORE ME ON THIS 3rd

DAY OF SEPTEMBER 2004.

*Lana Wildman*
NOTARY PUBLIC

"OFFICIAL SEAL"
Lana Wildman
Notary Public, State of Illinois
My Commission Exp. 04/27/2008